UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELENA VIRLAN TSANEV,<br><br>                Plaintiff,<br><br>   v.<br><br>MIROSLAV MARINOV TSANEV, *et al.*,<br><br>                Defendants. | Case No. C21-1667-MLP<br><br>ORDER |

## I.    INTRODUCTION

This matter is before the Court on Plaintiff Elena Virlan Tsanev's ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion"). (Pl.'s Mot. (dkt. # 36).) Plaintiff seeks summary judgment on the enforcement of immigration financial support under the United States Citizenship and Immigration Services ("USCIS") Form I-864, Affidavit of Support ("Affidavit of Support") against Defendant Miroslav Marinov Tsanev ("Defendant"). (*Id.* at 1-2.) Defendant opposed Plaintiff's Motion (Def.'s Resp. (dkt. # 39)), and Plaintiff filed a reply (Pl.'s Reply (dkt. # 44)). The Court heard oral argument from the parties on August 3, 2022. (Dkt. # 46.)

Having considered the parties' submissions, oral argument, the balance of the record, and

ORDER - 1

the governing law, Plaintiff's Motion (dkt. # 36) is DENIED, as explained further below.

## II.  BACKGROUND

Plaintiff is a citizen of Moldova and a lawful permanent resident of the United States residing in Everett, Washington. (Pl.'s Decl. (dkt. # 37) at ¶¶ 2-3.) Defendant is a citizen of the United States who resides in Marysville, Washington, and is Plaintiff's ex-spouse. (*Id.* at ¶ 4.). The Tsanevs married on May 22, 2016, in South Carolina, and Defendant began the process of securing resident status for Plaintiff at that time. (*Id.* at ¶¶ 8-9.) As a result, on July 27, 2016, Plaintiff became the beneficiary of an Affidavit of Support signed by Defendant, who served as her primary immigration sponsor at that time.[1] (*Id.* at ¶¶ 9-10, 16; *see* McLawsen Decl. (dkt. # 38-1) at 5-6.) Plaintiff's residency application was approved by USCIS on November 1, 2016. (Pl.'s Decl. at ¶ 18.)

In January 2019, the Tsanevs separated as a couple. (Pl.'s Decl. at ¶ 23.) On October 10, 2019, the parties executed a divorce settlement agreement, and a final decree was entered on January 13, 2020. (*Id.* at ¶¶ 24-25; McLawsen Decl., Ex. 5 (dkt. # 38-5) at 1-4.)

On December 13, 2021, Plaintiff filed her complaint. (*See* Compl. (dkt. # 1).) Plaintiff's complaint alleges a breach of contract claim that Defendant failed to provide her with the basic level of income as promised in the Affidavit of Support, and thus, Defendant breached his financial support obligation under the Affidavit of Support. (*Id.* at ¶¶ 5-6, 9, 107-115.)

On June 20, 2022, Plaintiff filed the instant Motion, seeking back-owed support and specific performance of the Affidavit of Support per her breach of contract claim. (*See* Pl.'s

---

[1] In addition, Plaintiff's complaint alleges that Defendant Viktor Peykov executed a second Affidavit of Support in her favor at the behest of Defendant, and thus, Mr. Peykov is jointly and severally liable with respect to the support obligation. (Compl. at ¶¶ 8-9, 116-124.) Plaintiff notes she has been unable to secure service of process on Mr. Peykov and anticipates moving for voluntary dismissal. (*See* Pl.'s Mot. at 8-9.)

1 Mot.) On July 12, 2022, Defendant filed a response (Def.'s Resp. (dkt. # 39)), and on July 22,

2 2022, Plaintiff filed her reply (Pl.'s Reply (dkt. # 44)). The Court heard oral argument on August

3 3, 2022. (Dkt. # 46.) This matter is now ripe for the Court's review.

### III. DISCUSSION

5       Plaintiff argues that Defendant executed a valid Affidavit of Support to support her, that

6 she gained residency status on the basis of that Affidavit of Support, and that since its execution,

7 Defendant has failed to maintain her income at 125% of the federal poverty guidelines in 2019,

8 2020, and/or 2021.[2] (Pl.'s Mot. at 10-13.) Therefore, Plaintiff moves for summary judgment,

9 claiming there is no genuine issue of material fact that she is entitled to damages for back-owed

10 support through December 31, 2021, based on her federally taxable income and an order of

11 specific performance that Defendant is obligated to provide Plaintiff support necessary to

12 maintain her at an income not less than 125% of the federal poverty guidelines. (*Id.* at 9, 23-24.)

13 Defendant responds that: (1) there is a statutory absence of a provision in 8 U.S.C. § 1183(a) on

14 how to determine whether a sponsor has breached an Affidavit of Support; (2) genuine issues of

15 material fact exist because Plaintiff provided incorrect calculations of her income; and (3)

16 Defendant's support obligation terminated in January 2020 once Plaintiff reached 40 qualifying

17 quarters of coverage under the Social Security Act. (Def.'s Resp. at 1.)

18       In this case, the Court finds there is no genuine dispute that Defendant is obliged to

19 support Plaintiff under the Affidavit of Support and that a terminating event has not occurred.

20 However, as further explained below, genuine issues of material fact exist as to Plaintiff's breach

---

[2] *See* Annual Update of the HHS Poverty Guidelines, 87 Fed. Reg. 3315 (Jan. 21, 2022), *available at* https://www.federalregister.gov/documents/2022/01/21/2022-01166/annual-update-of-the-hhs-poverty-guidelines (last visited Aug. 18, 2022). The Court may take judicial notice of such guidelines. Fed. R. Evid. 201(c)(1); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

ORDER - 3

of contract claim because Plaintiff has failed to demonstrate that there are no triable issues as to her income.

### A.     Summary Judgment Standard

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the Court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. It is the nonmoving party's responsibility to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted source omitted). The Court need not "scour the record in search of a genuine issue of triable fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but

ORDER - 4

it may consider other materials in the record."). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see McElyea v. Babbitt*, 833 F.2d 196, 197-98 n.1 (9th Cir. 1987) (per curiam).

### B. Affidavit of Support

Under the Immigration and Nationality Act ("INA"), an immigrant seeking admission to the United States is inadmissible if the immigrant "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A); 8 C.F.R. § 213a.2(a). Individuals who would be inadmissible for this reason may become admissible if their sponsor executes an Affidavit of Support. *See* 8 U.S.C. § 1183a(a)(1); *see also Shumye v. Felleke*, 555 F.Supp.2d 1020, 1023 (N.D. Cal. 2008). The purpose of the Affidavit of Support is to prevent an immigrant from becoming a public charge. *See Erler v. Erler ("Erler I")*, 824 F.3d 1173, 1179 (9th Cir. 2016); *Liu v. Mund*, 686 F.3d 418, 422 (7th Cir. 2012).

By signing the Affidavit of Support, the sponsor agrees to provide support to maintain the sponsored immigrant at an annual income that is not less than 125% of the federal poverty guidelines while the Affidavit of Support remains enforceable. *See Cyrousi v. Kashyap*, 386 F.Supp.3d 1278, 1282 (C.D. Cal. 2019) (citing 8 U.S.C. § 1183a(a)(1)(A)); *see also Erler I*, 824 F.3d at 1175. Once executed, the Affidavit of Support functions as a contract between the sponsor and the U.S. Government for the benefit of the sponsored immigrant, and of any Federal, State, or local governmental agency or private entity that administers any "means-tested public benefits program." *Id.* (citing 8 U.S.C. § 1183a(a)(1)(B)). Both the sponsored immigrant and the entity that provides the public benefit to the sponsored immigrant may enforce the Affidavit of Support against the sponsor. *Id.*

ORDER - 5

1         The sponsor's financial support obligation under an Affidavit of Support terminates only when the benefitted immigrant: (1) becomes a U.S. citizen; (2) works or receives credit for 40 qualifying quarters of coverage under the Social Security Act; (3) loses their status as a lawful permanent resident and departs the United States; (4) becomes the subject of a new Affidavit of Support; or (5) dies. *See Erler I*, 824 F.3d at 1176-77 (citing 8 C.F.R. § 213a.2(e)(2)(i); 8 U.S.C. § 1183a(a)(2)-(3)); *see also Li Liu v. Kell*, 299 F.Supp.3d 1128, 1131 (W.D. Wash. 2017).

        Here, the parties do not meaningfully dispute that Defendant executed the Affidavit of Support and was otherwise bound by its support obligation. (*See* Pl.'s Mot. at 11-12, 21-23; Def.'s Resp at 5.) Defendant claims that his obligation under the Affidavit of Support ceased in January 2020 because Plaintiff attained enough qualifying quarters of coverage under the Social Security Act based on Defendant's qualifying quarters during their marriage. (*See* Def.'s Resp. at 11-12 (citing 8 U.S.C. § 1183a(a)(3)(B)(ii)).) Yet the record evinces that Plaintiff has not received such credit.[3] (*See* Pl.'s Decl., Ex. 1 (dkt. # 37-1) at 1.) Furthermore, Defendant's position would require that Plaintiff be credited with six to eight quarters of qualifying coverage for each year from 2016 through 2020, which is not statutorily permissible. *See* 42 U.S.C. § 413(a)(2)(B)(vii) ("[N]o more than four quarters of coverage may be credited to any calendar year after 1977."). Therefore, Defendant has failed to demonstrate his support obligation to Plaintiff has terminated.

        As a result, the parties primarily dispute what definition of income should apply in determining Plaintiff's income, and based on Plaintiff's income, whether Defendant breached his support obligation.

---

[3] Per Plaintiff's submitted Social Security Statement, as of February 2022, Plaintiff had only 31 credits for qualifying quarters of coverage. (Pl.'s Decl., Ex. 1 at 1.)

ORDER - 6

### i.     Plaintiff's "Income"

Plaintiff primarily argues that damages in this matter should be calculated in relation to Plaintiff's taxable income pursuant to the definition of "income" provided by 8 C.F.R. § 213a.1, a regulation related to a sponsor's income under an Affidavit of Support, an approach recently approved by this Court.[4] (Pl.'s Mot. at 13-14, 16 (citing *Flores v. Flores*, 2022 WL 668783, at *5 (W.D. Wash. Mar. 7, 2022).) Defendant counters that 8 U.S.C § 1183a, the applicable statute relating to the Affidavit of Support, does not define income and that allowing § 213a.1 to serve as the sole measure would lead to a windfall because it would fail to account for Plaintiff's received government benefits, including food stamps and a housing subsidy, in addition to previously provided spousal support. (Def.'s Resp. at 3-7.) Defendant further argues this Court's prior use of § 213a.1 in *Flores* is otherwise distinguishable. (*Id.* at 7.)

Though several provisions of the applicable statutes and the regulations contain instructions for calculating a sponsor's income, the Ninth Circuit has previously found no similar provisions exist for calculating a sponsored immigrant's income for purposes of determining whether a sponsor has breached his or her duty to support the immigrant. *Erler I*, 824 F.3d at 1177 (citing 11 U.S.C. § 1183a(f)(6)(A)(iii); 8 C.F.R. § 213a.1; 8 C.F.R. § 213a.2(c)(2)); *see also Flores*, 2022 WL 668783 at *3 ("The [INA] . . . does not define income with respect to the

---

[4] Plaintiff additionally contends Defendant failed to specifically admit or deny her representations of her 2019 and 2020 income. (*See* Pl.'s Mot. at 18 n.97, 20 n.109 (citing Compl. at ¶¶ 87, 89; Answer (dkt. # 11) at 8-9.) Therefore, Plaintiff avers such amounts should be deemed admitted pursuant to Fed R. Civ. P. 8(b)(6). (*See* Pl.'s Mot. at 9-10.) However, Defendant's answer was filed *pro se* before he attained counsel in this matter, and therefore, his Answer is to be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). In any event, it is clear that Defendant's Answer did not agree with Plaintiff's representations of her 2019 or 2020 income. (*See* Answer at ¶¶ 85 ("Plaintiff deliberately failed to report her exact income for the year of 2020"), 87 ("Ms. Tsanev income for 2019 of $8218.00 is entirely incorrect . . ."), 91 ("Ms. Tsanev income for 2019 of $8218.00 is entirely incorrect.").

ORDER - 7

sponsored immigrant."). Nevertheless, in unreported cases, the Ninth Circuit has twice recently provided some clarity as to what financial benefits may qualify as income.

In one unreported case, the Ninth Circuit has held that means-tested benefits qualify as income of the sponsored immigrant. *Erler v. Erler ("Erler II")*, 798 F. App'x 150 (9th Cir. 2020). Specifically, the Ninth Circuit found:

> Means-tested public benefits, such as food stamps, are income to the recipient even if they are non-taxable for the purposes of federal income tax reporting. This does not result in a windfall for the sponsor. Section 1183a creates a requirement for the entity providing the public benefits to seek reimbursement from the sponsor for the value of the benefits provided to the sponsored immigrant.

*Id.* at 151 (citing 8 U.S.C. § 1183a(b)(1)(A)). The Ninth Circuit ultimately concluded the value of plaintiff's foods stamps received, in addition to the value of her foreign pension, qualified as income to her and functioned as offsets to the sponsor's financial liability under 8 U.S.C. § 1183a. *Id.*

In another unreported and similar case, the Ninth Circuit reversed a district court's jury instruction on the definition of a sponsored immigrant's income, which included wages, cash payments, property, services, gifts, educational grants, and constructively received income, such as payments made on Plaintiff's behalf. *Anderson v. Anderson*, 840 F. App'x 92, 95 (9th Cir. 2020). The Ninth Circuit found that the district court erred in offsetting the sponsored immigrant's damages with "non-income—specifically, the judgment for attorney's fees and TRICARE health insurance benefits." *Id.* In doing so, the Ninth Circuit clarified that "[w]e recognize the lack of precedential authority defining 'income' in this context. Nevertheless, establishing a uniform definition is unnecessary to resolve this appeal and *we decline [Plaintiff's] invitation to restrict 'income' to the definition set forth in [§ 213a.1]*." *Id.* (emphasis added).

ORDER - 8

In this District—in the context of a motion for default judgment, and as later found distinguishable below—the Honorable David G. Estudillo recently found *Erler II* and *Anderson* non-binding because they were unpublished decisions. *Flores*, 2022 WL 668783 at *4. Given the lack of precedential authority on the issue, and because the INA is silent as to the definition of sponsored immigrant's income, Judge Estudillo agreed with the plaintiff's contention that *Chevron* deference to the agency definition of income set forth under § 213a.1 was permissible. *Id.* at *4-5. Thus, Judge Estudillo found the sponsored immigrant's income limited to her taxable income. *Id.* at *5 (citing *Sultana v. MD Safayet Hossain*, 2021 WL 5936909, *2 (N.D. Tex. Dec. 15, 2021) (using § 213a.1 to define income); *Fukita v. Gist*, 2021 WL 288121, *5 (D. Minn. Jan. 28, 2021) ("As used in the pertinent regulations, 'income' means the sponsored immigrant's federally taxable income.")).

On this issue, this Court declines to find that Plaintiff's "income" is restricted to only Plaintiff's taxable income pursuant to § 213a.1. In determining Plaintiff's "income," the Court is mindful of the purpose of the Affidavit of Support, that the sponsored immigrant's income remain sufficient to prevent him or her from becoming a public charge, while still striking a balance to ensure the sponsored immigrant is not unjustly enriched. *See Erler I*, 824 F.3d at 1177, 1179.

As previously noted above, neither the applicable statutes and regulations nor the Affidavit of Support itself clearly define "income" for the sponsored immigrant as opposed to the sponsor. *See* 8 U.S.C. § 1183a; 8 C.F.R. § 213a.1. Per § 213a.1:

> Income means an individual's total income (adjusted gross income for those who file IRS Form 1040EZ) for purposes of the individual's U.S. Federal income tax liability, including a joint income tax return . . . Only an individual's Federal income tax return—that is, neither a state or territorial income tax return nor an income tax return filed with a foreign government—shall be filed with an affidavit of support, unless the individual had no duty to file a Federal income tax return,

>and claims that his or her state, territorial or foreign taxable income is sufficient to establish the sufficiency of the affidavit of support.

Though § 213a.1 provides definitions of income for use in determining whether someone is eligible to sponsor an immigrant, and what is to be filed with an Affidavit of Support, § 213a.1 fails to elucidate how to calculate a sponsored immigrant's income to determine whether an immigrant has been supported at 125 percent of the federal poverty guidelines. *See Erler I*, 824 F.3d at 1177; *Dahhane v. Stanton*, 2016 WL 4257536, at *4 (D. Minn. Aug. 12, 2016) ("The problem for [Plaintiff] is that [§ 213a.1] provides definitions for use in determining whether someone is eligible to *sponsor* an immigrant; the regulation has nothing to do with calculating whether an immigrant has been supported at 125 percent of the federal poverty level."); *see also Stump v. Stump*, 2005 WL 2757329, at *5 (N.D. Ind. Oct. 25, 2005).

In fact, due to a lack of clear statutory definition, several federal courts have interpreted a sponsored immigrant's income "expansively." *See e.g., Ronchin v. Hoop*, 2021 WL 4902456, at *3 (N.D. Ill. Oct. 21, 2021); *Golipour v. Moghaddam*, 438 F.Supp.3d 1290, 1301 (D. Utah 2020); *Belevich v. Thomas*, 2019 WL 2550023, at *5 (N.D. Ala. June 20, 2019). Such an expansive approach has typically "[included] the immigrant's government benefits, educational grants, and alimony, if any." *Id.*; *see also Yuanjie Du v. McCarthy*, 2017 WL 5629641, at *2 (N.D.W. Va. June 20, 2017), *aff'd*, 710 F. App'x 611 (4th Cir. 2018) ("Resources that may qualify as income include: housing subsidies, education, grants, alimony, income from wages and employment, and any other direct financial benefits received by the sponsored immigrant.").

Furthermore, as made clear in *Erler II* and *Anderson*, the Ninth Circuit has previously been tasked with requests to use taxable income as the definition of a sponsored immigrant's

income, but has either explicitly or implicitly rejected such an approach both times.[5] *See Anderson*, 840 F. App'x at 95 ("[W]e decline [plaintiff's] invitation to restrict 'income' to the definition set forth in [§ 213a.1]."); *see also Erler* II, 798 F. App'x at 151 ("[Plaintiff] cites to 8 C.F.R. § 213a.2(c) to support her argument that income not subject to federal taxation cannot be included in calculating her income post-separation . . . however, [§ 213a.2(c)] applies only to determine whether a sponsor's household income is sufficient to sponsor an immigrant, not to calculate the sponsored immigrant's income post-separation."). Though neither *Erler II* nor *Anderson* provide binding precedent on this Court as unpublished decisions, the Court finds the Ninth Circuit's declination of § 213a.1 persuasive in light of the majority of federal courts that have also declined to restrict a sponsored immigrant's income to only their taxable income. *See Toure-Davis v. Davis*, 2015 WL 993575, at *6 (D. Md. Mar. 4, 2015) (finding housing subsidies provided by allowing sponsored immigrant to live rent free in third-party's home constituted "income" to the sponsored immigrant); *Younis v. Farooqi*, 597 F.Supp.2d 552, 554-55 (D. Md. 2009) (finding alimony payments constituted "income," but child support payments did not because they were not for the benefit of the sponsored immigrant); *Shumye*, 555 F.Supp.2d at 1026-27 (finding sponsored immigrant's "income" as sum of student grants, income received through employment, alimony payments, and value of housing subsidies received).

Finally, the Court notes that *Flores* is distinguishable from the instant matter. *Flores* previously came to this Court in the posture of a default judgment where Judge Estudillo qualified that the Court's use of § 213a.1 was premised on a lack of precedential authority in this area of law and that "because [defendant] defaulted, the parties [had] not presented a compelling

---

[5] Though the Ninth Circuit declined to restrict the plaintiff's income to her taxable income per 8 C.F.R. § 213a.2(c), plaintiff's briefing in *Erler II* also demonstrates that plaintiff sought to define her income per § 213a.1, which was implicitly rejected. *See Erler II*, Case No. 18-16703, dkt. # 7 at 6-8, 11 (9th Cir.).

reason for discarding this definition." *Flores*, 2022 WL 668783 at *5. This Court also notes that *Sultana* and *Fukita* —the only cases cited as authority for the use of § 213a.1 in *Flores*—left the decision to utilize § 213a.1 to define income largely unexplained. Neither case addressed the considerable caselaw on the subject viewing the issue of a sponsored immigrant's income expansively in light of the absence of clear statutory or regulatory guidance. *See Sultana*, 2021 WL 5936909 at *2; *Fukita*, 2021 WL 288121 at *5.

Thus, based on the decisions of the majority of federal courts considering this issue, matters regarding Plaintiff's: (1) previously received spousal support: (2) housing subsidies; (3) means-tested government benefits; (4) educational grant and scholarship funds; and (5) other received financial benefits must all be accounted for to determine whether Plaintiff's "income" was below 125% of the federal poverty guidelines. The totality of such information is not presently available to the Court. Consequently, the Court declines to restrict Plaintiff's "income" to only her taxable income pursuant to § 213a.1 nor can the Court determine at this time what Plaintiff's "income" was during the relevant subject periods under the Affidavit of Support.

        ii.       *Breach of Affidavit of Support*

Even if the Court were to adopt Plaintiff's sought definition of "income," Defendant has also set forth genuine issues of material fact as to Plaintiff's taxable income for determining whether Defendant breached his duty under the Affidavit of Support.[6] (*See* Def.'s Resp. at 7-8.) Per her deposition testimony, Plaintiff testified she was able to live off of $4,462 in 2020, and $3,185 in 2021, due to received scholarships that she used as "living money," in addition to her

---

[6] In addition to Plaintiff's deposition testimony, Defendant submitted several spreadsheets purportedly summarizing Plaintiff's received scholarships and grant money, but it is unclear where this information was derived from or Defendant's methodology for arriving at such figures. (*See* Def.'s Am. Decl. (dkt. # 42), Exs. A-B.)

ORDER - 12

receipt of food and housing benefits. (*See* Homsher Decl. (dkt. # 40), Exs. B (Pl.'s Dep. at 14:15-15:2), C (Pl.'s Dep. at 29:12-17).) Pursuant to applicable IRS tax rules and guidelines, any amount of a scholarship used for incidental expenses—such as room and board, travel, and optional equipment—is to be included in an individual's gross taxable income.[7] As such, Defendant contends that amounts Plaintiff used as "living money" were not reported on her tax returns. (*See* Def.'s Resp. at 7-8.)

      Plaintiff responds that she justifiably relied on the work of her tax preparers and that all tax-related documents received from her school were provided to those preparers. (Pl.'s Reply at 5-7 (citing Second McLawsen Decl. (dkt. # 45-1), Ex. 1 (Pl.'s Dep. at 46:7-23, 47:10-20)).) As a result, Plaintiff argues she should be entitled to rely on the income stated in her tax returns. (*Id.* at 6-7 (citing *United States v. Boyle*, 469 U.S. 241, 250-51 (1985); *United States v. Kroll*, 547 F.2d 393, 396 (7th Cir. 1977)).) In the alternative, Plaintiff argues Defendant failed to set forth a factual dispute as to what specific scholarships or grants Plaintiff actually received and/or what amounts were used for incidental rather than qualifying educational expenses with admissible evidence. (*Id.* at 7-9.)

      Plaintiff's cited authority and argument are unavailing. *Boyle* and *Kroll* both concerned issues regarding whether a taxpayer had shown "reasonable cause" and "ordinary business care and prudence" for the late filing of estate tax returns in cases where the executor of a decedent's estate sought refund of statutory penalties imposed by the IRS. *See Boyle*, 469 U.S. at 250-51; *Kroll*, 547 F.2d at 394. Neither case suggests—let alone stands as applicable authority—that an individual is entitled to rely on reported income in his or her tax returns because such returns

---

[7] *See* IRS Topic No. 421, Scholarships, Fellowship Grants, and Other Grants, *available at* https://www.irs.gov/taxtopics/tc421 (last visited Aug. 18, 2022).

ORDER - 13

were professionally prepared.[8] And though it remains unclear at this stage what scholarships or grants were actually awarded to Plaintiff, or what amounts should have been reported as taxable income based on their use, Plaintiff's deposition testimony clearly acknowledges she did in fact use some amount for incidental expenses, and that she remained unaware such amount may need be reported as taxable income. (*See* Homsher Decl., Exs. B (Pl.'s Dep. at 14:15-15:2), C (Pl.'s Dep. at 29:12-17) D (Pl.'s Decl. at 31:19-32:4).)

Viewing the evidence in the light most favorable to Defendant, the Court concludes several triable disputes remain as to what received financial benefits comprise Plaintiff's "income" during the relevant subject periods under the Affidavit of Support.

### C. Specific Performance

Finally, Plaintiff requests an order of specific performance that Defendant provide continued support under the Affidavit of Support. (Pl.'s Mot. at 23-24.) As considered above, the Court finds there is no genuine dispute that the Affidavit of Support remains presently enforceable against Defendant and that a terminating event has yet to occur. *See* 8 U.S.C. § 1183a(c) (authorizing courts to award "specific performance and payment of legal fees and other costs of collection"). However, at this juncture, an order of specific performance would not clarify Defendant's support obligation under the Affidavit of Support as Plaintiff has not included evidence of all of her current or future received financial benefits for the determination of her "income."

### IV. CONCLUSION

For the foregoing reasons, the Court hereby orders:

---

[8] *Boyle* instead merely notes in *dicta* that when "an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *See Boyle*, 469 U.S. at 251 (emphasis in original).

(1) Plaintiff's Motion (dkt. # 36) is DENIED.

(2) The Clerk is directed to send a copy of this Order to the parties.

Dated this 18th day of August, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 15